Sarah Woodson
PEQUIGNOT + MYERS
24th & 25th floor
Century Park Plaza
1801 Century Park East
Los Angeles, CA 90067
Phone: 202-328-1200
Facsimile: 202-328-2219
swoodson@pmiplaw.com

*Attorneys for Plaintiff Lollicup USA Inc.*

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LOLLICUP USA INC. <br><br> 6185 Kimball Ave <br> Chino, CA 91708 <br><br> Plaintiff, <br><br> v. <br><br> HUHTAMAKI, INC. <br><br> 9201 Packaging Drive <br> De Soto, Kansas 66018 <br><br> Defendant. | Case No.: <br><br> **COMPLAINT** <br><br> JURY TRIAL DEMANDED |

Plaintiff Lollicup USA Inc. ("Lollicup") brings this complaint ("Complaint") against Defendant Huhtamaki, Inc. ("Huhtamaki") and alleges as follows:

## NATURE OF THE CASE

1.      This is an action for Declaratory Judgment and other relief brought under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. A substantial actual controversy exists between the parties, based on *inter alia* Huhtamaki's allegations that Lollicup infringes

U.S. Trademark Registration Nos. 1,273,210 ("the '210 registration") and 1,980,625 ("the '625 registration") (collectively "Trade Dress" or "the Trade Dress") and Huhtamaki's express threats of litigation related thereto. There is also an actual controversy because of Huhtamaki's false and misleading advertisements and representations that a T-shaped feature of its cup carrier trays is patented, when it is not. In particular, Huhtamaki's false and misleading claims, pertaining to patent protections it does not have, lead customers of its products, and customers of Lollicup's products, to believe that Huhtamaki's cup carriers have a nature, characteristics, or qualities that they do not. The false and misleading claims also falsely inform the parties' customers that Huhtamaki is the only lawful seller of the cup carriers, and that Lollicup is an unlawful seller of its cup carriers.

2.      Lollicup seeks a judgment that 1) it has not infringed, and is not infringing, the Trade Dress; 2) the Trade Dress is invalid and/or unenforceable; and 3) Huhtamaki is estopped from preventing others from practicing the Trade Dress. Lollicup also seeks a judgment that Huhtamaki is liable to Lollicup for unfair competition and for falsely advertising that it has patent protections that it does not have, and that *inter alia* Huhtamaki's products have a nature, characteristics, or qualities that they do not have. Lollicup also seeks damages and/or restitution, an injunction, and attorney fees, costs, and other relief against Huhtamaki.

## THE PARTIES

3.      Plaintiff Lollicup is a California company with a business address of 6185 Kimball Avenue, Chino, California 91708. Lollicup specializes in manufacturing and sales of high-quality, environmentally friendly, disposable products for the restaurant and food service industry. Lollicup's product lines, sold under the trademark "Karat", include food packaging, containers, tableware, cups, lids, cutlery, and straws, as well as the cup carriers which are the subject of this complaint.

4.      Upon information and belief, Defendant Huhtamaki is a Kansas corporation, with its principal place of business at 9201 Packaging Drive, Desoto, KS 66018, and a wholly owned subsidiary of Huhtamaki Americas, Inc., which itself is owned by Huhtamaki Oyj, a public company domiciled in Espoo, Finland.  According to Huhtamaki, it manufactures and distributes food service products, including molded fiber food and beverage packaging and consumer goods products, including cup carrying trays which are the subject of this complaint.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over these claims under 15 U.S.C. §§ 1121 and 1125(a) and 28 U.S.C. §§ 1331 and 1338, and jurisdiction to issue declaratory judgments under 28 U.S.C. §§ 2201 and 2202. This Court also has supplemental jurisdiction, in accordance with 28 U.S.C. §§ 1367(a).

6.      This Court has personal jurisdiction over Huhtamaki because Huhtamaki is actively engaged in business within this district and is currently marketing and selling cup carrier products in this district. For example, Huhtamaki maintains a manufacturing facility at 4209 Noakes St, Commerce, California 90023, within the county of Los Angeles.

7.      Venue is proper in this District under 28 U.S.C. §§1391(b), (c), and (d).

## FACTUAL BACKGROUND

**I.      Huhtamaki Improperly Acquired and Asserted Trade Dress Rights in a Patented and Functional Product Feature – the Inverted "T-Shaped" Design**

8.      This action arises in part from Huhtamaki's improper acquisition and subsequent assertion, against Lollicup, of purported Trade Dress rights in a functional product feature— the inverted T-shaped design of its beverage carrier trays. Huhtamaki claims exclusive rights in the alleged Trade Dress claimed in the '210 and '625 registrations. Huhtamaki also expressly alleges that Lollicup has infringed these registrations by selling beverage carrier trays featuring their own version of a T-slot and has expressly threatened litigation against Lollicup.

9. Huhtamaki, however, patented the features comprising the alleged Trade Dress in U.S. Patent No. 6,398,056 (the '056 patent), issued to Huhtamaki in 2002. The '056 patent, in fact, specifically claims the inverted T-shaped feature in multiple claims, including claims 5, 14, and 23-24.

10. Under U.S. patent law, which finds its origins in a mandate of the U.S. Constitution, an inventor who is granted a patent must dedicate the claimed invention to the public once the patent term expires, as consideration for the 'patent bargain' for the (temporary) monopoly granted to it. The '056 patent expired on July 10, 2020, and on that date, the inventions claimed in the '056 patent claims were irrevocably dedicated to the public. Consequently, Huhtamaki can no longer claim exclusive rights to the inverted T-shape feature using the trademark laws. Courts have repeatedly held that a product configuration claimed in an expired utility patent cannot later be protected as trade dress, as doing so constitutes an unlawful extension of the limited monopoly granted by patent law.

11. As an independent reason that Huhtamaki's Trade Dress rights are foreclosed, Huhtamaki's alleged Trade Dress is *de jure* functional. That is, its primary purpose is to provide functional improvements and features to Huhtamaki's cup carrier trays. The purported Trade Dress is therefore unprotectable under trademark law.

12. More specifically, the T-shaped cutout is essential to the function of the beverage carrier tray, because (among other things) a) it provides flexible, yieldable stabilizing walls that accommodate cups of different sizes while securing them in place; b) it plays a critical functional role in cup stability including by providing resistance to tipping by providing improved carrier-to-cup contact; c) it provides controlled flexibility without compromising strength; d) it aids carrier tray stackability; and e) it reduces weight for storage and shipping. Huhtamaki's own commercial advertising touts similar functional features. Moreover, the '056 patent itself – written by

Huhtamaki - repeatedly emphasizes the functionality of the purported Trade Dress, including with experimental data included in the '056 specification. The '056 patent also claims the feature in at least four claims, which the Supreme Court of the United States has described as strong, essentially insurmountable evidence of the type of 'functionality' which is a blanket bar to a party attempting to claim Trade Dress in the same features. Thus, in addition to Huhtamaki's Trade Dress claims being barred because of the Constitutional bargain it made, they are also barred because Huhtamaki's purported Trade Dress is primarily functional.

13.     Despite knowing that the Trade Dress features are functional, Huhtamaki withheld this information from the United States Trademark Office when applying for the '210 and '625 registrations, thereby deceiving the Trademark Office into issuing unlawful registrations which ostensibly foreclose the public from practicing what should be properly in the public domain, contravening well-established, important public policy. It has also sought to baselessly enforce this Trade Dress against Lollicup, threatening Lollicup with 'cease and desist' letters and promises of litigation if Lollicup did not comply.

14.     Similar to Huhtamaki's baseless Trade Dress claims, Huhtamaki also advertises and publicly represents that the inverted T-shape feature of its cup carriers is currently patented. It is not. These false and misleading claims lead customers of its products, and customers of Lollicup's products, to believe that the cup carriers have a nature, characteristics, or qualities that they do not have. The false and misleading claims also falsely inform the parties' customers that Huhtamaki is the only lawful seller of products featuring the T-shaped feature, and that Lollicup is an unlawful seller of its own cup carriers. These false claims have and will continue to harm Lollicup and are flagrant violations of both state and federal law.

II.     **Huhtamaki Acquired the '056 Utility Patent As Consideration for its Promise to Dedicate the '056 Inventions to the Public Upon Expiration of the Patent Term**

15.     An application for utility patent, *TIPPING-RESISTANT CUP HOLDING TRAY,* was filed with the United States Patent and Trademark Office ("USPTO") on July 10, 2000, in the name of Vincent Letourneau and Benton Brown, as U.S. Patent Application No. 09/613,261 ("the '261 application").

16.     Huhtamaki Company Technology, Inc. took ownership of the '261 patent application by way of assignment recorded in the records of the United States Patent Office. On information and belief, Huhtamaki Company Technology, Inc. is an affiliate entity owned or controlled (or subject to the common control of) Defendant Huhtamaki.

17.     The cup carrier tray covered by that application is reproduced here from (example) Fig. 1 of the '056 patent that ultimately issued from the '261 application:



18.    The '261 application included a written description of the inverted T-shape which Huhtamaki now claims is its enforceable Trade Dress. The inverted T-shape disclosed in the '261 application, including within the Summary of Invention section, is the exact configuration of inverted T-shape which Huhtamaki utilizes in its commercially sold cup carriers, such as the StrongHolder® branded carriers offered in Huhtamaki's product catalog. It is also the same inverted T-shape claimed as Huhtamaki's Trade Dress in both the '210 and '625 registrations.

### III.    Huhtamaki's Patent Protection Was for a "Limited Time"

19.    When Huhtamaki filed the '261 patent application for a utility patent, it struck a bargain with the United States and the public at large.  That bargain has its genesis in Article 1, Section 8, Clause 8 of the Constitution of the United States. According to this bargain, if Huhtamaki's patent application were successful, Huhtamaki would be granted an "exclusive right" to its invention for a "limited time." After the limited term of any granted utility patent was over, the rights to the invention disclosed, described, and/or claimed in the '261 application would enter the public domain.

### IV.    Huhtamaki's '056 Utility Patent Expired and Huhtamaki's '210 and '625 Registrations Impermissibly Seek to Revoke its Dedication of the T-Shaped Design to the Public and to Extend its "Limited Time" Monopoly through Federal Trademark Registrations

20.    The '261 patent application issued as the '056 patent on June 4, 2002.

21.    As indicated on its face, Huhtamaki Company Technology, Inc. is the assignee of record of the '056 patent.  Based on the date of application, under then-applicable United States patent law, the '056 patent expired twenty years from the earliest effective filing date, or on or about July 10, 2020.

22.    During the life of the '056 utility patent, Huhtamaki enjoyed the right to exclude others from using the inverted T-shape in cup carriers, due to the existence of its patent monopoly. However, on July 10, 2020, the inventions claimed in the '056 patent, including the inverted T-shaped feature, were irrevocably dedicated to the public.

23.    Huhtamaki's '210 and '625 registrations ostensibly cover (i.e., protect against copying) a product configuration incorporating an inverted T-shape essentially the same as the inverted T-shape disclosed and claimed in the '056 patent and which was dedicated to the public upon '056 patent expiration. Thus, breaking the constitutional patent bargain, the registrations unlawfully and inequitably purport to rescind Huhtamaki's dedication to the public and to extend Huhtamaki's 'Limited Time' monopoly, in conflict with the U.S. Constitution and patent statute.

V.    **Functional Features of Huhtamaki's Purported Trade Dress Abound in the '056 Utility Patent**

24.    The (expired) '056 patent contains a lengthy, highly detailed disclosure and discussion of Huhtamaki's Trade Dress, referred to as an "inverted T-shape" therein, which is replete with a description of its functional purpose when included in a cup carrying tray.

25.    According to Huhtamaki's '056 patent specification itself, Huhtamaki's Trade Dress exhibits the following functions useful to the utilitarian purpose of carrying trays:

A.    **FUNCTION: Cup Stability and Secure Holding**

26.    According to the '056 patent, the inverted "T-shape" improves how the tray securely holds cups of different sizes by allowing stabilizing walls to flex outwardly while gripping the inserted cup. This is evinced in the Summary of the Invention (Column 3, Lines 19-27), which explains:

"The stabilizing walls are yieldable so that the stabilizing walls are deflected outwardly by a cup being inserted into the cup-holding socket. Each stabilizing wall extends down into the socket to a distance above the socket floor, so that an opening exists between the bottom edge of the stabilizing wall and the cup-contacting surface. In one embodiment of the invention, a slot vertically bisects the stabilizing wall, so that the opening and the slot together form an inverted 'T' shape."

Likewise, the Description of the Preferred Embodiments (Column 5, Lines 11-16) explains:

"The stabilizing walls 22 yield when a cup is inserted into the cup-holding socket, and are deflected outwardly as the cup is inserted into the socket. The yieldability of the stabilizing walls [attributable to the inverted T feature] can be [further] controlled by adjusting thickness, density, and nature of the material, the angle of the stabilizing walls, and the like."

More specifically, the slot (upper part of the inverted "T") allows controlled outward deflection, preventing cups from being too tightly held or too loose. Moreover, the opening beneath the stabilizing wall (i.e., lower part of the inverted "T") allows flexibility while maintaining support.

## B.   FUNCTION: Improved Resistance to Tipping

27.    The stabilizing walls formed by the removal of material to create the inverted "T-shape" prevent tipping by ensuring cups remain upright even when the tray is tilted at different angles. The T-shape also extends the depth of the socket floor for functional reasons. This is evinced by the Summary of the Invention (Column 3, Lines 1-7) which explains:

"The lowermost and innermost points of the stabilizing walls [formed by inclusion of the inverted T-shape] comprise contact points between the stabilizing wall and a cup. A feature of the invention is that the depth of the socket floor is increased relative to the contact points, as compared to prior art trays, such that the cup-holding socket has improved cup-holding ability and is more resistant to tipping than prior designs."

28.    The '056 patent specification, describing Experimental Test Results (Column 6, Line 18, to Column 7, Line 15; Tables A and B), highlights performance improvements obtained using the carrier tray with the inverted T-shape, including as described in the patent as follows:

- o   Tests showed significant improvements over prior art trays.

o   Tipping resistance for 32-ounce and 24-ounce cups at tilt angles of 25°, 30°, 35°, and 40° is compared, and the patentee concluded from the tests that the invention "offers a significant improvement in the ability to hold large filled cups without tipping." (Column 7, Lines 12-14).

o   The invention, which includes the inverted T-shape, had fewer failures than prior trays (e.g., Chinet and Tenneco designs), proving superior cup stability.

29.    More specifically, the inverted "T-shape" allows the walls to grip cups higher up, reducing tipping risk when the tray is moved or tilted. Moreover, the use of the inverted T-shape, to ensure cup contact points are positioned strategically, improves cup retention across different cup sizes.

## C.    FUNCTION: Structural Support and Controlled Flexibility

30.    The inverted "T-shape" design retains structural strength in the cup carrier while ensuring flexibility to accommodate different cup diameters.

31.    The specification, describing Distance and Ratio Definitions (Column 5, Line 31, to Column 6, Line 18; Figure 3), also describes a "key ratio" which is obtained utilizing the inverted T-shape, which optimizes cup contact points for stability and support. According to the '056 patent specification:

o   Distance D3 is the distance from the cup (side) contacting surface to the carrier bottom (the contact point for the cup bottom);

o   Distance D2 is the distance from carrier bottom to the stabilizing shoulder.

o   The "key ratio" is defined as: D3:D2 = 0.4 to 0.5, meaning in the described utilitarian invention, the stabilizing walls, formed by the excision of material which

results in the inverted T-shape, contact cups at an optimal height for stability and

support.

*See*, also, Description of the Preferred Embodiments (Column 4, Line 64, to Column 5, Line 2;

Figures 1 and 3), which explains:

"Each stabilizing wall 22 extends downwardly from the corresponding stabilizing

shoulder 12 to a distance above the socket floor 8. The stabilizing wall 22 may optionally

include a slot 28 which vertically bisects the stabilizing wall. The lowermost, innermost

point of the stabilizing wall is defined as the contact point 24 of the stabilizing wall."

32.    In summary, the slot in the stabilizing wall (top of the inverted "T") provides

controlled flexibility while maintaining overall tray strength, which is a functional, competitive

advantage of the trays described in the '056 patent. Further, the opening (i.e., bottom of the inverted

"T") ensures force distribution, preventing excessive stress on any single point, in addition to

increasing the depth of the cup holding socket.

### D.    FUNCTION: Nesting and Efficient Storage

33.    In addition to the above functions and benefits, the inverted "T-shape" configuration

allows for better stacking when trays are nested for storage and transport. This is evident from the

Background of the Invention (Column 1, Lines 14-17 (describing the invention)), which explains:

"The tray is shaped to permit empty trays to be nested, one within another, to form a

convenient and compact stack ('cube') for shipment and storage prior to use."

34.    Specifically, the use of the inverted "T-shape" creates flexible stabilizing walls,

allowing the stabilizing walls to flex which aids in tray stacking. The use of the inverted T-shape

also removes material from the walls which thereby reduces frictional interference with stacking, in

addition to making sure that the trays remain lightweight and compact, reducing costs for shipping and storage.

**E.    FUNCTION: Claims Expressly Claiming the Inverted "T-Shape"**

35.    Further serving as strong evidence that the T-shape (alleged by Huhtamaki to be its protectable Trade Dress) is functional is that Huhtamaki expressly claimed the T-shaped feature in the claims of the '056 utility patent. Indeed, the following claims claim the inverted "T-Shape", demonstrating the shape's functionality, as well as its criticality to the invention:

Claim 5: "A tray as claimed in claim 4, wherein the opening between the contact point and the cup-contacting surface and the slot in the stabilizing wall together form the shape of an inverted 'T' beneath each stabilizing shoulder."

Claim 14: "A tray as claimed in claim 13, wherein the slot in each stabilizing wall extends vertically up the stabilizing wall and forms the shape of an inverted 'T' with the opening between the contact point of the stabilizing wall and the cup-contacting surface."

Claim 23: "A tray as claimed in claim 19, wherein a slot in each stabilizing wall extends vertically up the stabilizing wall, such that the slot forms the shape of an inverted 'T' with the opening between the contact point of the stabilizing wall and the cup-contacting surface."

Claim 24: "A tray as claimed in claim 21, wherein a slot in each stabilizing wall extends vertically up the stabilizing wall, such that the slot forms the shape of an inverted 'T' with the opening between the contact point of the stabilizing wall and the cup-contacting surface."

36.    In summary, consistent with the '056 patent being a utility patent, the '056 patent explicitly claims the inverted "T" shape as a structural and functional improvement with primarily utilitarian purpose.

**VI.    The Functional Features of Huhtamaki's Purported Trade Dress Are Touted in Huhtamaki's Advertising**

37.    Additional evidence that Huhtamaki's Trade Dress primarily serves a function is found in Huhtamaki's own advertising. According to (for example) Huhtamaki's own food service catalog, which lists the subject drink carriers for sale:

**All StrongHolder® drink carriers feature patented T-Slot design, enabling the carrier to hold cups ranging from 8oz to 44oz firmly in place, without spilling or tipping**. Available in 1, 2 or 4-cup options, StrongHolder® drink carriers are convenient and compact, stacking and de-nesting with ease. Plus, StrongHolder® drink carriers are eco-friendly – made from 100% recycled materials and compostable.

(emphasis added).

In other words, Huhtamaki's own advertising touts the ability of the "T-Slot design", embodied in its StrongHolder® drink carriers, to hold cups securely across all cup sizes (e.g., varying diameters), preventing cup movement when carried. The T-slot design is also described as preventing spillage and tipping, which directly relates to the function of the stabilizing walls and contact points described in the '056 patent.

38.    Conversely, Huhtamaki's advertising (upon information and belief) does not tout the T-shaped feature as a source identifier, so that it would function as 'trade dress' – a species of trademark. For example, Huhtamaki's advertising does not direct its customers to 'look for' the T-shaped feature so that they will recognize Huhtamaki as a source of cup holding trays which incorporate the inverted "T".

39.    Huhtamaki, likewise, does not mark the inverted T-shape with a trademark registration symbol, or even the symbol "TM". Consequently, neither Lollicup nor the public was placed on notice (constructive or actual) that the T-shape was a trademark or trade dress.

**VII.    Even If Huhtamaki's Trade Dress is Valid and Enforceable, Lollicup Does Not Infringe**

1

2

3

40.    Even if Huhtamaki is found to be the owner of valid, enforceable Trade Dress rights, Lollicup cannot be found to infringe such rights.

4

5

6

7

8

9

41.    Copies of the inverted T-shape feature are ubiquitous in cup carriers sold by competitors of Huhtamaki in the United States. Examples of such carriers are sold by Pactiv and Uline. Consequently, even if Huhtamaki's Trade Dress 'marks' served as source identifiers at one time, they do not do so now. The Trade Dress has become generic to cup carriers, which use it principally because of its functional advantages, which are necessary to compete in the marketplace.

10

11

12

13

14

42.    Also, Huhtamaki's and Lollicup's customers are large corporate, commercial institutions.  These customers are highly sophisticated and purchase the cup carriers by the thousands or more. Thus, it is unlikely if not impossible for such customers to mistakenly purchase Lollicup's cup carriers, mistakenly believing them to come from Huhtamaki as a source, particularly when the carriers are typically bought from Lollicup as a direct supplier.

15

16

17

18

43.    Confusion is also unlikely because of the differences between the appearances of the Trade Dress and the inverted T-shaped cut-outs in Lollicup's products. A comparison is illustrated below:

19

20

21

22

23

24

   

25

26

27

28

As seen from this comparison, the inverted T-shaped configuration claimed in the '210 and '625 registrations has visibly sharp, well-defined corners and edges, and an overall symmetrical, sterile appearance, with the tips of the horizontal portion converging at sharp, angular corners. Conversely, the horizontal portion of Lollicup's cut-out is more rounded,

with an organic, bulbous appearance, with tips formed from a continuous, uninterrupted curve that u-turns, without forming a corner, towards the vertical stem. As for the vertical stems themselves, Huhtamaki's vertical stem is perfectly symmetrical, with parallel sides and a perfectly rounded top with a uniform radius of curvature. In contrast, Lollicup's vertical stem is approximately 1/3rd the length (vis-à-vis Huhtamaki's), without perfectly parallel sides, without a rounded top, and a utilitarian appearance that connotes a functional, structural purpose rather than an intentional aesthetic. It also includes a vertical extension, where the paper-fiber material remains unexcised.

### COUNT I

### Declaratory Judgment of Invalidity and Unenforceability of the '210 and '625 Registrations Based On Functionality

44.     This is a claim for declaratory judgment arising under the Declaratory Judgment Act, 28 U.S.C. §2201.

45.     Lollicup reasserts and realleges all of the allegations contained in the foregoing paragraphs as though the same were fully set forth herein.

46.     The Lanham Act does not exist to reward manufacturers for their innovation in creating a particular device. The Lanham Act, furthermore, does not protect trade dress in a functional design simply because an investment has been made (assuming one has been) to encourage the public to associate a particular functional feature with a single manufacturer or seller.

47.     Instead, if a product configuration, or if a product feature is functional, it cannot serve as a trademark.

48.     A product feature is functional, and cannot serve as a trademark, i) if it is essential to the use or purpose of the article; or ii) if it affects the cost or quality of the article.

49.     For a product configuration or feature, it is not necessary for the use of the product configuration to be a competitive necessity to be functional. A product configuration is also functional if it is a reason the product works and, once that is established, it does not matter if other product configurations are possible.

50.     If the functionality of a product configuration or feature is established, secondary meaning need not be considered. Protection by trade dress is prohibited.

51.     Huhtamaki's beverage carrier tray consists entirely of functional structural parts and features. Similarly, the inverted T-shaped design covered by the '210 and '625 registrations is embodied entirely by functional, structural features.

52.     Huhtamaki's expired '056 utility patent describes and claims the exact same product configuration covered by Huhtamaki's '210 and '625 trademark registrations. Moreover, the '056 patent describes the functionality of the inverted T-shape which Huhtamaki claims it owns as its Trade Dress.

53.     As established by Huhtamaki's '056 patent, as well as Huhtamaki's cup carrier advertising, the purported Trade Dress claimed in the '210 and '625 registrations is functional *inter alia* because it makes the product work for its intended purpose by a) providing flexible, yieldable stabilizing walls that accommodate cups of different sizes while securing them in place; b) playing a critical functional role in cup stability including by providing resistance to tipping by providing improved carrier-to-cup contact; c) providing controlled flexibility without compromising strength; d) aiding carrier tray stackability; and e) reducing product weight for storage and shipping.

54.     Likewise, the configuration of the inverted T-shape Trade Dress was selected because of practical, engineering-type considerations which contribute to economy of manufacture.

55.     By registering the "inverted T-shaped openings" as a trademark, Huhtamaki has deprived, and is attempting to continue to deprive, others of the opportunity to use the same functional design, which substantially hinders competition.

56.     Declaratory relief is both appropriate and necessary adjudging that Huhtamaki's alleged Trade Dress, embodied by the '210 and '625 trademark registrations, is invalid and/or unenforceable. The '210 and '625 registrations should also be cancelled in accordance with 15 U.S.C. §1119.

### COUNT II

### Declaratory Judgment of Invalidity and Unenforceability Based on an Unconstitutional Attempt to Extend Huhtamaki's Patent Monopoly in View of Article 1, Section 8 of the U.S. Constitution

57.     This is a claim for declaratory judgment arising under the Declaratory Judgment Act, 28 U.S.C. §2201.

58.     Lollicup reasserts and realleges all of the allegations contained in the foregoing paragraphs as though the same were fully set forth herein.

59.     Huhtamaki's expired '056 utility patent expressly claims the T-shaped structural feature of Huhtamaki's beverage carrier tray and repeatedly describes its utilitarian functions and purpose in the '056 specification as one of the important inventive tray features. Upon expiration of the '056 patent on or about July 10, 2020, the inventions claimed in the '056 patent – including Huhtamaki's purported Trade Dress - were dedicated to the public.

60.     Consequently, Lollicup is entitled to a judgment that Huhtamaki's Trade Dress, including as claimed in the '210 and '625 registrations, is unenforceable and/or invalid, or at minimum that Huhtamaki is estopped – because of its dedication of the T-shape to the public – from enforcing the registrations.  More specifically, if Huhtamaki is not estopped, judgment should be entered that the '210 and '625 registrations are invalid and unenforceable as an unconstitutional extension of Huhtamaki's patent monopoly in view of Article 1, Section 8 of the U.S. Constitution (stating that Congress shall have the power "[t]o promote the Progress of Science and useful Arts, by securing *for limited Times* to Authors and Inventors the exclusive Right to their respective

Writings and Discoveries" (emphasis added)). The '210 and '625 registrations should also be cancelled in accordance with 15 U.S.C. §1119.

## COUNT III

## Declaratory Judgment of Noninfringement and/or Non-liability

61.     This is a claim for declaratory judgment arising under the Declaratory Judgment Act, 28 U.S.C. §2201.

62.     Lollicup reasserts and realleges all of the allegations contained in the foregoing paragraphs as though the same were fully set forth herein.

63.     Lollicup was unaware of Huhtamaki's '210 and '625 registrations prior to Huhtamaki's accusations of trade dress infringement.

64.     On information and belief, Huhtamaki does not and did not mark its Trade Dress with a registration symbol "®", or any other marking compliant with 15 U.S.C.  §1111, prior to accusing Lollicup of Trade Dress infringement.

65.     Lollicup is unaware of any actual confusion between the parties' products which has resulted from Lollicup's use of a T-shape in its cup carrier trays.

66.     The parties' customers are highly sophisticated purchasers that typically purchase the parties' respective cup carriers directly from the parties, who each identify themselves as the source of the cup carrier goods.

67.     The T-shape claimed in the '210 and '625 registrations does not serve as a source identifier, because Huhtamaki does not promote the T-shape as a source identifier, and it is also inherently incapable of serving as a source identifier. Consumers see the T-shape as a functional feature and not as a source-identifier, which identifies the source-origin of goods.

68.     Even if the T-shape claims in the '210 and '625 registrations was a source identifier at one time, it does not serve as a source identifier now. The use of the T-shape in cup carriers, by

parties other than Huhtamaki and Lollicup, is ubiquitous in the industry because of its functional features and benefits. Consequently, the T-shape does not serve a source identifying function for this reason, and has become generic to cup carriers.

69.    Even if the purported Trade Dress was a source identifier, the T-shape that Lollicup incorporates into its own products is ornamentally different in appearance, and the parties would not be likely to confuse the source of Lollicup's products with Huhtamaki because of these ornamental differences. This possibility of confusion is further foreclosed because Lollicup's cup carrier products are sold in a manner that Lollicup is identified as their source.

70.    Lollicup is entitled to a judgment that it does not infringe Huhtamaki's Trade Dress. Alternatively, Lollicup is entitled to a judgment that Lollicup's liability is limited in accordance with 15 U.S.C. §1111, because Huhtamaki did not give notice of its '210 and '625 registrations with any or adequate trademark markings.

**COUNT IV**

**False Advertising Under the Lanham Act, 15 U.S.C. § 1125(a)**

71.    This is a claim for declaratory judgment arising under the Declaratory Judgment Act, 28 U.S.C. §2201.

72.    Lollicup reasserts and realleges all of the allegations contained in the foregoing paragraphs as though the same were fully set forth herein.

73.    Huhtamaki's false and misleading advertisements and representations that an inverted T-shaped feature of its beverage carrier trays is patented, when it is not, is a violation of 15 U.S.C. § 1125(a). In particular, Huhtamaki's false and misleading claims pertaining to patent protections it does not have lead customers of its products, and customers of Lollicup's products, to believe that the beverage carriers have a nature, characteristics, or qualities that they do not have. The false and misleading claims also falsely inform the parties' customers that Huhtamaki is the

1  only lawful seller of the beverage carrier trays, and that Lollicup is an unlawful seller of its

2  beverage carrier trays.

3      74.    Huhtamaki has been unjustly enriched, and Lollicup has lost money and suffered

4  reputational damage resulting from Huhtamaki's false and misleading advertisements.

5                                      **COUNT V**

6      **Violation of the California Unfair Competition Law ("UCL")**
       **Cal. Bus. & Prof. Code §§ 17200, *et seq*. (Pleading in the Alternative)**

7

8      75.    This is a claim for declaratory judgment arising under the Declaratory Judgment

9  Act, 28 U.S.C. §2201.

10     76.    Plaintiff reasserts and realleges all of the allegations contained in the foregoing

11 paragraphs as though the same were fully set forth herein.

12     77.    Plaintiff and Defendant are "persons" within the meaning of the UCL. Cal. Bus. &

13 Prof. Code § 17201.

14

15     78.    The UCL defines unfair competition to include any "unlawful, unfair or

16 fraudulent business act or practice," as well as any "unfair, deceptive, untrue or misleading

17 advertising." Cal. Bus. Prof. Code § 17200.

18

19     79.    In the course of conducting business, Defendant engaged in unlawful and unfair

20 business acts by, among other things, falsely representing and advertising a) that it owns patent

21 protections that it does not have; b) that its products have a quality or character that they do not

22 have; and c) that Defendant is the only legally authorized seller of certain configurations of cup

23 carriers, including those which utilize an inverted T-shape.

24     80.    Plaintiff is a victim of Defendant's unlawful conduct. Plaintiff appears to consumers

25 to be an unlawful seller of cup carriers, because of Defendant's false advertisements that Defendant

26 is the only lawful seller. Consequently, Plaintiff has lost sales as a result of this untrue perception.

27 Plaintiff has also lost sales and thus money, because consumers are being deceived, by Defendant's

28

false advertising, to believe that Defendant's cup carriers have superior qualities or characteristics, or a particular nature, that Defendant's products do not actually have. Defendant's false advertising likewise deceives consumers by conveying the false message that only Defendant's products have certain product features, because they are patented, and no other competitor is (according to Defendant's advertising) permitted to utilize them. Defendant's conduct is ongoing.

81.     Defendant's actions, claims, and misleading statements were false, misleading and/or likely to deceive, and did deceive, consumers within the meaning of Business & Professions Code § 17200, *et seq*.

82.     As a result of its unlawful and unfair business practices, Defendant was unjustly enriched, at the expense of Plaintiff.

### COUNT VI

### Unfair Competition Under California Common Law

83.     This is a claim for declaratory judgment arising under the Declaratory Judgment Act, 28 U.S.C. §2201.

84.     Lollicup reasserts and realleges all of the allegations contained in the foregoing paragraphs as though the same were fully set forth herein.

85.     Huhtamaki's actions described herein are unlawful and unfair and constitute unfair competition under the common law of the State of California. As a result of the unlawful acts and practices of Huhtamaki, Lollicup has suffered injury in fact and has lost, and continues to lose, money or property.

86.     Huhtamaki's conduct constitutes a continuing threat to Lollicup. Lollicup is thus entitled to injunctive relief preventing Huhtamaki from continuing its wrongful course of conduct, and enjoining Huhtamaki from its false advertising and from asserting or otherwise enforcing its Trade Dress against Lollicup.

87.    Lollicup has suffered and will continue to suffer irreparable injury by reason of the acts, practices, and conduct of Huhtamaki alleged above until and unless the Court enjoins such acts, practices, and conduct.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Lollicup USA Inc. prays that this Court grant it the following relief:

A.    A declaration that:

(1)    Huhtamaki's alleged product configuration trademark and '210 and '625 registrations are invalid and unenforceable based on functionality;

(2)    Huhtamaki's alleged product configuration trademark and '210 and '625 registrations are invalid and unenforceable because the registrations constitute an unconstitutional extension of Huhtamaki's '056 patent monopoly;

(3)    Huhtamaki is estopped from asserting infringement of the '210 and '625 registrations because Huhtamaki dedicated the formerly patented features embodied by the Trade Dress to the public;

(4)    Lollicup's accused carrier trays do not infringe Huhtamaki's alleged product configuration trademark or '210 and '625 registrations;

(5)    Lollicup's liability (if any) is limited by Huhtamaki's failure to put the public on notice of the '210 and '625 registrations, and its Trade Dress rights, as required by 15 U.S.C. §1111;

(6)    The inverted T-shape feature claimed in the '210 and '625 registrations does not serve as a source identifier and is therefore not enforceable trade dress;

B.     An order directing the U.S. Patent and Trademark Office to cancel U.S. Trademark Registration Nos. 1,273,210 and 1,980,625 pursuant to 15 U.S.C. § 1119, on the basis that the registrations claim functional subject matter;

C.     A finding that Huhtamaki violated 15 U.S.C. § 1125(a); Cal. Bus. & Prof. Code §§ 17200, *et seq.*; and California's common laws of unfair competition by i) falsely advertising that it is entitled under patent law to exclude others from copying its cup carriers with the inverted T-shaped design feature; ii) falsely advertising that its cup carriers have a nature, characteristics, or features that are exclusive to Huhtamaki; iii) falsely advertising that its cup carriers have a nature, characteristics, or features that the carriers do not have; and iv) falsely informing the public that Lollicup is not a lawful user of inverted T-shapes in its own cup carriers;

D.     An order requiring that Huhtamaki and its officers, agents, servants, employees, owners and representatives, and all other persons, firms or corporations in active concert or participation with them, be enjoined and restrained from:

(1)     Using in any manner the term "patented" on or in connection with Huhtamaki's unpatented beverage carrier trays;

(2)     Using or displaying the term "patented" on product literature and in advertising of Huhtamaki's unpatented beverage carrier trays; and

(3)     Directly or indirectly enforcing the Trade Dress against Lollicup or its customers, or otherwise accusing Lollicup or its customers of infringement of such Trade Dress, whether privately or publicly;

E.     An order requiring that Huhtamaki, pursuant to 15 U.S.C. § 1116(a), file with this Court and serve upon Lollicup within thirty (30) days after entry of an injunction, or such extended period as the Court may direct, a written report under oath describing in detail the manner and form in which Huhtamaki has complied with the injunction, including ceasing all manufacture and sale of

its unpatented beverage carrier trays, as well as all distribution of product literature and advertising of its beverage carrier trays, falsely displaying the term "patented";

F.      An award to Lollicup of monetary damages or restitution in an amount to be fixed by the Court in its discretion and as just;

G.      A finding that this is an exceptional case under 15 U.S.C. § 1117(a), together with an award to Lollicup of its attorney fees and its costs and expenses of litigation pursuant to 15 U.S.C. § 1117(a);

H.      An order awarding Lollicup pre-judgment and post-judgment interest to the full extent allowed under the law, as well as its costs; and

I.      Such other and further relief as the Court may deem just, proper, and equitable under the circumstances.

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Lollicup requests a jury trial on all issues so triable.


                                        Respectfully submitted,

Dated: February 5, 2025                 /s/ Sarah Woodson

                                        Sarah Woodson
                                        PEQUIGNOT + MYERS
                                        24th & 25th floor
                                        Century Park Plaza
                                        1801 Century Park East
                                        Los Angeles, CA 90067
                                        Phone: 202-328-1200
                                        Facsimile: 202-328-2219
                                        swoodson@pmiplaw.com

                                        *Attorneys for Plaintiff Lollicup USA Inc.*

                                        Matthew A. Pequignot
                                        (pending *pro hac vice* admission)
                                        PEQUIGNOT + MYERS
                                        2585 Ala Namahana Pkwy Unit 1007

Kilauea, Hawaii 96754
Phone: 202-328-1200
Facsimile: 202-328-2219
mpequignot@pmiplaw.com

*Attorneys for Plaintiff Lollicup USA Inc.*

**CERTIFICATE OF SERVICE**

     I hereby certify that on this date, a true and correct copy of the foregoing was filed via the Court's CM/ECF system, thereby effectuating service upon all counsel of record via electronic means.


Dated: February 5, 2025                          /s/ Sarah Woodson

                                            Sarah Woodson
                                            Attorney for Lollicup USA Inc.